OPINION
On February 5, 1995, Edna May Sluss died. Prior to her death, Ms. Sluss was under a guardianship. Ms. Sluss's guardian was appellant, Robert Matz. Appellant, Shirley A. Matz, was appointed administratrix of Ms. Sluss's estate. Counsel of record for the guardianship and the estate was appellant, James Childs, Esq.[1] The guardianship was closed on March 26, 1996.
On September 8, 2000, appellees, Miriam Hillyer and John Matz, estate beneficiaries, filed a motion for hearing on wrongful payment of guardianship fees and motion to set hearing on repayment of wrongfully taken attorney fees. The first motion alleged guardian fees of $5,800.00 were wrongfully paid from the estate on December 28, 1995. The second motion alleged attorney fees of $9,806.25 were overpaid from the estate on/or before September 6, 1996. Appellees sought vacation of the April 1, 1997 entry approving and settling the estate's partial account. By judgment entry filed December 27, 2000, the trial court ordered appellant Shirley Matz to refund the estate $5,800.00 plus interest, and ordered appellant James Childs to refund the estate $2,135.75.
Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE PROBATE COURT ERRED IN FINDING THAT EXCEPTORS'/APPELLEES' CLAIMS WERE NOT TIME BARRED UNDER O.R.C. 2109.35.
 II THE PROBATE COURT ERRED IN FINDING THAT EXCEPTORS'/APPELLEES' CLAIMS WERE NOT BARRED, IN THE ALTERNATIVE, BY RES JUDICATA, LACHES, LAW OF THE CASE, COLLATERAL ESTOPPEL AND WAIVER.
 III THE PROBATE COURT ERRED IN FINDING FRAUD WITHOUT ANY EVIDENTIARY PROCEEDINGS.
 I
Appellants claim the trial court erred in not finding appellees' claims were barred pursuant to R.C. 2109.35. We disagree.
Appellants argue appellees failed to bring their claims for fraud within the statutory one year time limitation. It is appellants' position that the discovery rule as developed in tort claims applies sub judice. In other words, appellants argue there was a "cognizable event" that should have triggered the discovery rule. Appellants argue the filing of the 1995 Schedule of Claims and the 1996 Fiduciary Partial Account in the estate was a cognizable event that should have triggered the one year statute of limitations of R.C. 2109.35.
We disagree with this argument for two reasons. Unlike the statute of limitations which was the genesis of the "cognizable event rule," R.C.2109.35 mentions "discovery" only:
 The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:
 (A) The order may be vacated for fraud, upon motion of any person affected by the order or upon the court's own order, if the motion is filed or order is made within one year after discovery of the existence of the fraud. Any person who is subject to any legal disability may file the motion at any time within one year after the removal of the legal disability or within one year after he discovers the existence of the fraud, whichever is later, or his guardian or a successor guardian may do so during the period of the legal disability. If the death of any person occurs during the period within which he could have filed the motion, his administrator or executor may file it within one year after the person's death.
Courts have previously interpreted "discovery" under R.C. 2109.35 and its predecessor G.C. 10506-40(c) as "actual" discovery. In re Bentley
(1951), 116 N.E.2d 738, 66 Ohio Law Abs. 363, reversed on other grounds (1955), 163 Ohio St. 568; Draz v. Hurlbert (June 8, 1981), Trumbull App. No. 2836, unreported.
Appellees point out it was not until after the first round in the probate and appellate courts (hereinafter "1998 case") that the attorney fees for the guardianship were found to be unreasonable. The attorney for the estate, Mr. Childs, filed and argued in a January 14, 2000 hearing that he was owed $7,670.50 for attorney fees regarding the guardianship. Following this hearing, the parties engaged in discovery which included all of the filings and accounts from the estate wherein appellees discovered the fraud they complain of sub judice.
As noted by the trial court in its judgment entry filed December 27, 2000, the heirs (appellees) would not be privy to the guardianship accounts although they were notified of the filings. The guardianship was not an adversarial proceeding and appellees were not parties to the proceedings. The trial court analyzed the issue of discovery and found actual discovery did not occur until after the January 14, 2000 proceeding. We concur with this analysis.
Assignment of Error I is denied.
 II
Appellants claim appellees' action for fraud is barred by the doctrine of res judicata, laches, law of the case, collateral estoppel and waiver. We disagree.
Res judicata is defined as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus. Collateral estoppel "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." (Emphasis omitted.) Whitehead v. General Telephone Co. (1969),20 Ohio St.2d 108, 112.
We find these doctrines of law are not applicable to the fraud claim against the estate. The fees contested in the 1998 case were fees that Mr. Childs attempted to apply against the estate and not the guardianship. Further, the law of the case is inapplicable because the holding of the 1998 case addressed attorney fees chargeable to the estate only, not the guardianship. The judgment entry under review in the 1998 case included the following conclusions of law:
 Upon the testimony and evidence presented, a reasonable number of hours necessary to be expended in the rendering of legal services for the administration of the estate in question would be 200.
 Total compensation due Attorney James W. Childs is $19,000.00, to wit, 200 hours at $95.00 per hour.
See, Judgment Entry filed October 21, 1998.
The case sub judice concerns the issue of wrongfully paid guardian and guardianship attorney fees by the estate. We therefore conclude the doctrines of res judicata, collateral estoppel and law of the case are inapplicable because as discussed in Assignment of Error I, the discovery rule statute permits such a reopening upon discovery.
Appellants also claim appellees should be barred under the equitable principle of laches. As we noted in Assignment of Error I, the discovery of the fraud was not made until after the January 14, 2000 hearing and subsequent discovery proceedings. Therefore, the doctrine of laches, given the one year limitation of R.C. 2109.35, is inapplicable.
Assignment of Error II is denied.
 III
Appellants claim the trial court abused its discretion in finding fraud without setting the matter for an evidentiary hearing. We disagree.
On October 3, 2000, the trial court held a pretrial and journalized a pretrial order.[2] The order specifically addressed the issues of "the payment of $5,800.00 to Robert Matz for a `claim'" and the "alleged overpayment of guardian attorney fees in the amount of $9,806.25." The trial court indicated "that it would review the matters and determine if a further hearing would be required or counsel would have an opportunity to present memorandum in support of their respective positions." See, Pretrial Order filed October 3, 2000.
Memorandums and supplemental memorandums were filed on behalf of both parties arguing the necessity of granting a Civ.R. 60(B)(5) motion. The memorandums discussed the legitimacy of the fraud claim. Neither party requested an evidentiary hearing.[3]
Although the trial court predicated its ruling on "insufficient evidence" on the payment of attorney fees, it is clear the trial court's conclusion was based upon a thorough examination of the various accounts filed sub judice. The filings spoke for themselves and could not have been altered by any amount of testimony. It was unnecessary to set any evidentiary hearing.
Following the pretrial order, the trial court issued a memorandum wherein it reviewed the issue of repayment to the estate. See, Memorandum filed October 16, 2000. The trial court addressed the statute of limitations problem and held "the area of concern that would give rise to a potential fraud* * * relates to the $5,800.00 receipt signed by Robert D. Matz and designated as a claim in the estate* * * [which] appears the (sic) be the same $5,800.00 specifically denied by the Court on December 26, 1995 on an application for guardian fees in the guardianship." The trial court ordered additional memorandum on the repayment issues.
In finding the guardian fees were wrongly taken, the trial court used the court records and no other evidence. In its judgment entry filed December 27, 2000, the trial court found the following:
 Despite the Court's denial of an application filed on August 31, 1995 for $5800.00 in guardianship and bookkeeping fees, the estate, through Shirley Matz as administratrix, paid these fees to Robert and herself.
 The convoluted method of accounting for guardian and attorney fees in the guardianship of Edna Sluss can be demonstrated by examining the Schedule of Claims filed in the estate of Edna Sluss on November 23, 1995. Here the parties attempted to give authenticity to guardianship expenditures that were inappropriately paid after the death of the ward. In support of this, the court notes that the Sixth and Partial Guardianship Accounting lists payments to Shirley Matz on March 10, 1995 of $2,000.00 and, on the same day, a payment to Robert Matz of $3,800.00. The total of these payments ($5,800.00) is shown as a single claim of Robert Matz' on the November 3, 1995 Schedule of Claims for the estate.
 The Court finds that the application filed on August 31, 1995 for $3,800.00 in additional guardian's fees to Robert, and $2,000.00 in bookkeeping fees to Shirley was denied by the Court on December 26, 1995. The Court further finds that the administratrix, in direct disregard of this Court's order, paid herself and Robert for the disallowed fees out of the estate assets with check number 512 and 513 dated December 28, 1995.
We note it was appellees who requested a hearing and now are defending the trial court's failure to conduct a hearing. The trial court was explicit in its orders. First, the trial court would review the memorandum and later decide if further hearing was necessary. Pretrial Order filed October 3, 2000. Second, the trial court found on the issue of the statute of limitations and permitted additional memorandum. Memorandum filed October 16, 2000. No one requested further hearings and the trial court ruled. Third, the evidence needed to address the issues raised by the motions were self-contained within the records and filings. Based upon the pattern of the litigation, we find the trial court did not abuse its discretion in not having a hearing, and in finding error in the granting of fees and ordering reimbursement.
Assignment of Error III is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Probate Division is affirmed.
Hon. Julie A. Edwards, P.J. Hon. William B. Hoffman, J. Hon. Sheila G. Farmer, J. concur.
[1] Currently, Seth Arkow, Esq. is estate administrator and counsel of record for the estate.
[2] The date was originally a hearing date, but the hearing was continued at the attorneys request and a pretrial was held.
[3] We note appellees requested a hearing in their original motions filed on September 8, 2000.